UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIN ROUNTREE,

      Plaintiff,

v.

NATIONSTAR MORTGAGE LLC and
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

      Defendants.
_____/

Case No. 2:17-cv-11902

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS [16] AND DISMISSING THE CASE**

    Plaintiff resides at 21817 Whittington, Farmington Hills, MI (the Property). Defendant Nationstar owns the mortgage on the Property and Defendant Federal National Mortgage Association (Fannie Mae) holds a sheriff's deed on the Property. Plaintiff filed an eight-count complaint and Defendants now move to dismiss it. A temporary restraining order (TRO) is currently in place, but will expire on the same day that the Court will issue this Order. For the reasons below, the Court will not further extend the TRO, but will instead grant the motion and dismiss the case.

## BACKGROUND

    Plaintiff purchased the Property in 2006 and obtained a warranty deed and a mortgage on the home. ECF 1-2; PgID 33–34. Apparently Plaintiff ran into financial difficulties and by October 2015 he was behind on two mortgage payments. ECF 18, PgID 392. Nationstar allegedly invited Plaintiff to apply for a loan modification, and on October 13, 2015, Nationstar sent him a letter that informed him he was "eligible for a Loan Modification Agreement, which [would] permanently change the terms of [his] mortgage."

ECF 1-2, PgID 58. The letter stated that if Plaintiff "compli[ed] with the terms of the required Trial Period Plan," Nationstar would modify his mortgage and might "waive all prior late charges that remain unpaid." *Id.* The letter instructed Plaintiff to sign and return two copies of an attached agreement by October 23, 2015 and to "[m]ake all remaining trial period payments on or before the dates they are due." *Id.* Plaintiff claims he returned the signed agreements on October 22, 2015 and that Nationstar confirmed receipt over the phone.

Plaintiff avers there was a "glitch" in Nationstar's system, so around January 2016, Nationstar told him to submit updated financial information, which he claims he did. ECF 1810, PgID 474. But on February 16, 2016, Nationstar sent him another document that differed from the documents purportedly sent in October 2015. The February documents included a "Borrower Assistance Form" that directed the borrower to provide verifying financial documents "to be considered for available solutions." ECF 1-2, PgID 77. Unlike the copies of the October documents provided to the Court, the February documents are completed, signed, and dated February 21, 2016. *Id.* at 77–84.

At that point, Plaintiff's version of the timeline becomes slightly unclear. From the Response brief and the affidavit upon which it relies, it seems that Plaintiff was "accepted in the Trial Payment Program ('TPP')" following his submission of the completed February documents, made three payments under the TPP that corresponded to October, November, and December 2015.[1] ECF 18, PgID 393. Nationstar[2] then directed Plaintiff to make a fourth payment and Plaintiff complied, but Nationstar rejected the payment. *Id.*

---

[1] It seems the payments were actually made in April, May and June 2016. *Cf.* ECF 18-10, PgID 475.

[2] The briefing refers exclusively to "Flagstar" from this point on.

Nationstar also "failed to execute the Loan Modification Agreement" and discussions about modifying the loan began in August 2016. *Id.*

What is crystal clear is that on August 12, 2016, Nationstar sent Plaintiff a letter. It informed Plaintiff that Nationstar was unable to grant his request for assistance and specifically listed three programs for which he had been declined. ECF 1-2, PgID 86. The letter also listed possible alternatives Plaintiff might be able to pursue, including reinstatement. *Id.* Plaintiff claims he "attempted in good faith to implement the Loan Modification Agreement and reinstate the loan" but has been unsuccessful. ECF 18, PgID 393.

Nationstar finally foreclosed on Plaintiff's home in January 2017 and Defendant Fannie Mae purchased the home at a sheriff's sale the next month. ECF 1-2, PgID 36–43. The redemption period would have ended on August 21, 2017, but the Court stayed the expiration date. ECF 15, 17.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Court may only grant a 12(b)(6) motion to dismiss if the allegations are not "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). In evaluating the motion, the Court presumes the truth of all well-pled factual assertions. *Bishop v. Lucent Techs. Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). Moreover, the Court must draw every reasonable inference in favor of the non-moving party. *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007). But a

3

"pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

Count One — Quiet Title

Plaintiff asserts that Defendants knew he was trying to enter into a loan modification agreement but they intentionally acted to preclude him from doing so. ECF 1-2, PgID 16–17. Consequently, the Property is currently in Fannie Mae's name. *Id.* In response, Defendants emphasize that quieting title is a remedy, not a stand-alone cause of action and further, Plaintiff has failed to satisfy the statutory prerequisites to quiet title. ECF 16, PgID 335–36.

Michigan law permits "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land" to bring a quiet-title action "against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff[.]" Mich. Comp. Laws § 600.2932(1). To succeed, a plaintiff must allege "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." Mich. Ct. Rule 3.411(B)(2).

Plaintiff claims an interest in the land, but the claim is unfounded. Even taking every assertion of the complaint as true, Plaintiff has asserted that he entered into a contractual obligation, defaulted on that obligation, and has tried, unsuccessfully, to renegotiate the terms. These facts do not make his interest in the property "superior" to Fannie Mae's, even if Nationstar's actions were improper. *See Yuille v. Am. Home Mortg. Servs., Inc.*, 483 F.

4

App'x 132, 135 (6th Cir. 2012) (citing *Richards v. Tibaldi*, 272 Mich. App. 522, 537 (2006)). Accordingly, Plaintiff's quiet-title count fails.

Counts Two and Three — Breach of Agreements and Specific Performance

The second and third counts concern an alleged contract. To state a breach of contract claim under Michigan law, a plaintiff must establish five elements: "1) parties competent to contract, 2) a proper subject matter, 3) a legal consideration, 4) mutuality of agreement, and 5) mutuality of obligation." *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003) (citing *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991)). Specific performance on a contract is an extraordinary remedy, rather than a cause of action itself. In any event, to succeed in a breach of agreement claim, or in securing an order for specific performance, Plaintiff must first plead the existence of a contract.

According to the Complaint, Plaintiff was "offered to apply for a Loan Modification" and he was "damaged as a result of Defendant(s) refusal to provide a permanent modification." ECF 1-2, PgID 17–18. But Plaintiff has not pointed to any consideration, mutuality of agreement, or mutuality of obligation to support a contractual arrangement. In short, Plaintiff has not shown that Defendants had any contractual obligation to reinstate his loan. And the written documents provided to the Court do not reveal an agreement, either. In sum, Plaintiff has failed to plead the existence of a contract that is plausible on its face. His breach-of-agreement and specific-performance counts fail.

Counts Four and Five — Promissory and Equitable Estoppel

Plaintiff claims Nationstar made negligent, and perhaps intentional, representations that it would "properly assess Plaintiff's eligibility for a HAMP or other modification" but never did. ECF 1-2, PgID 19–20. He avers that Nationstar knew he would rely on its

5

representation and could reasonably foresee that he would suffer damages—damages that he estimates to be $50,000. ECF 1-2, PgID 20–21. Although not clear from the Complaint,[3] Plaintiff seems to argue that Nationstar's representations included indicating it would not proceed with a sheriff's sale. Accordingly, Plaintiff argues Nationstar is estopped from enforcing that sale.

Michigan's statute of frauds restricts actions premised on promises by financial institutions. When a plaintiff brings an action against a financial institution to enforce a promise or commitment to lend money, extend or modify the repayment of a loan, waive a provision of a loan, or "make any other financial accommodation," the promise or commitment must be "in writing and signed with an authorized signature by the financial institution[.]" Mich. Comp. Laws § 566.132. An agreement to delay a sheriff's sale is an agreement to make a "financial accommodation." *Etts v. Deutsche Bank Nat'l Tr. Co.*, 126 F. Supp. 3d 889, 902 (E.D. Mich. 2015).

Plaintiff has neither presented nor alleged the existence of a written promise or commitment by Nationstar to modify his loan or otherwise forbear from a sheriff's sale. The February documents are not signed by Nationstar and the October documents are not signed by any party. *See* ECF 1-2, 58–75, 77–84. His promissory and equitable estoppel counts fail.

Count Six — Wrongful Foreclosure by Advertisement

---

[3] Count Four is titled "Promissory Estoppel" but functionally describes negligent and intentional misrepresentation. Count Five is titled "Equitable Estoppel," but under Michigan law, "equitable estoppel is not a cause of action unto itself; it is available only as a defense." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 399 (2006).

Plaintiff claims that the Property was wrongfully foreclosed upon because Defendants "knew or should have known that Plaintiff was attempting to enter into a Loan Modification" and nevertheless took actions "designed to preclude" Plaintiff from entering into a loan modification agreement. ECF 1-2, PgID 23. Specifically, Plaintiff accuses Nationstar of engaging in "dual tracking"—the practice of stringing a borrower along with the promise of modifying his loan, while simultaneously proceeding through the foreclosure process. According to Plaintiff, the allegation of dual tracking is "[t]he heart of the dispute[.]" ECF 18, PgID 397.

> There are four prerequisites to foreclose by advertisement:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

Mich. Comp. Laws § 600.3204. Plaintiff does not allege that any of these requirements were unmet, but rather, makes a general contention that dual tracking occurred. But "[c]ourts in this District have repeatedly held . . . that dual-tracking allegations do not constitute allegations of irregularities in the foreclosure process" because "each process is separate." *Buttermore v. Nationstar Mortg. LLC*, No. 16-14267, 2017 WL 2306446, at *7 (E.D. Mich. May 26, 2017). Plaintiff has not alleged a facially plausible claim of wrongful foreclosure.

Count Seven — Breach of Duty of Good Faith and Fair Dealing

Plaintiff also alleges that Nationstar breached a duty of good faith and fair dealing. Plaintiff claims that on October 13, 2015, he "was offered to apply for a Loan Modification" by Nationstar, and that he "accepted the offer and met the conditions" yet "Nationstar either failed or refused to provide [him] a permanent Loan Modification." ECF 1-2, PgID 24. Consequently, "Defendants unfairly interfered with Plaintiff's right to receive the benefits of the TPP and permanent Loan Modification." *Id.*

"Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing[.]" *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003); *see also Wypych v. Deutsche Bank Nat'l Tr. Co.*, No. 16-CV-13836, 2017 WL 1315721, at *7 (E.D. Mich. Apr. 10, 2017) (dismissing a similar claim in a foreclosure challenge). Plaintiff's count therefore fails.

Count Eight — Injunction and Other Relief

Plaintiff's final count merely seeks a permanent injunction as a remedy for the allegations in the preceding counts. Each of the other counts, however, has failed to state a claim for which relief may be granted. An injunction would therefore be inappropriate and the Court will not further extend the TRO.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion to Dismiss [16] is **GRANTED**.

**IT IS FURTHER ORDERED** that the case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

        s/Stephen J. Murphy, III
        STEPHEN J. MURPHY, III
        United States District Judge

Dated: September 11, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 11, 2017, by electronic and/or ordinary mail.

        s/Keisha Jackson for
        David Parker
        Case Manager